UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DIADNEL MAYEA DIAZ,

        Petitioner,

    v.

FLORIDA SOFT SIDE SOUTH,
WARDEN;  FIELD OFFICE
DIRECTOR, GARRET RIPA;  U.S.
DEPARTMENT OF HOMELAND
SECURITY, SECRETARY;
ACTING ICE DIRECTOR, TODD
LYONS; AND  U.S ATTORNEY
GENERAL,

        Resopondents.

Case No. 2:26-cv-1293-KCD-NPM

## **ORDER**

Petitioner Diadnel Mayea Diaz is a Cuban citizen who is subject to a final order of removal. (Doc. 10-2 at 5.)[1] She was recently detained by U.S. Immigration and Customs Enforcement ("ICE"). She now seeks a pro se writ of habeas corpus under 28 U.S.C. § 2241, challenging the legality of her immigration custody.

The background of this dispute is relatively straightforward. Diaz entered the United States in 2023. (Doc. 10-1 at 2.) The following year, she was ordered removed from the United States to Cuba. That deportation never

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

came to fruition, however, as she was granted withholding of removal under the Convention Against Torture. (Doc. 10-2 at 5.) Diaz was placed on an order of supervision, which was then revoked when ICE again took her into immigration custody on March 31, 2026. (Docs. 10-4, 10-3.)

Diaz now challenges her sudden re-detention. She argues it is unlawful on two fronts. First, she raises a substantive due process claim, claiming her removal is not reasonably foreseeable under the Supreme Court's framework in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1 at 10.)[2] Second, she presses a procedural due process challenge, claiming the Government stripped her of her liberty without affording him an opportunity to be heard. (*Id.* at 9.)

The Government, predictably, sees things differently. It maintains that her detention is fully authorized—indeed, mandated—by 8 U.S.C. § 1231. (Doc. 6.) In its view, Diaz's *Zadvydas* claim is premature because she has not been detained long enough. (*Id.* at 4.)

The Court agrees that Diaz's substantive challenge to her detention under *Zadvydas* falls short. That claim is simply premature under the established six-month benchmark. Her procedural claims, by contrast, hit their mark. Diaz was apparently never provided an interview or any real

---

[2] The habeas petition is not paginated, so the Court uses the numbering generated by its electronic filing system.

chance to respond to the reasons for her re-detention. Because the right to be heard in a meaningful manner is a fundamental requirement of due process, more process is constitutionally required here. Diaz's petition is thus **GRANTED IN PART AND DENIED IN PART** as set forth below.

## I. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## II. Discussion

Diaz's claims are addressed in turn.

### A. Substantive Due Process (Counts I, III)

Invoking the Fifth Amendment, Diaz first claims that locking a person up indefinitely without a meaningful plan for removal, like alleged here, is exactly the kind of arbitrary deprivation of liberty that the Constitution forbids. (Doc. 1 at 9.)

The Fifth Amendment entitles noncitizens to due process during deportation proceedings. At the same time, however, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). "[T]he through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Dep't of State v. Munoz*, 602 U.S. 899, 911-12 (2024). "In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976).

Because immigration detention is a civil tool rather than a criminal penalty, the constitutional line is generally drawn at punishment. *See Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981). By contrast, the Government can lawfully hold a noncitizen to ensure they are present for removal or to keep the public safe. That is simply the machinery of the immigration system doing its job. A substantive due process violation happens only when that machinery breaks down—when the detention loses its reasonable connection to effectuating a removal order and morphs into a penalty. *Cf. Lee v. Stone*, No. 2:11-CV-00014-RWS, 2011 WL 4553147, at *7 (N.D. Ga. Aug. 25, 2011). So long as the custody serves a legitimate immigration purpose rather than acting as a punitive measure, it stays on

4

the right side of the Constitution. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 747 (1987); *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 917 (E.D. Va. 2024) ("[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings.").

Diaz cannot show that her current stint in custody is a punishment masquerading as immigration processing or is otherwise arbitrary. She is subject to a final removal order that stands uncontested. The INA explicitly authorizes a return to detention to effectuate such orders. Under the rules, ICE may revoke a noncitizen's release to effectuate removal. 8 C.F.R. § 241.13(i)(2). And the government no doubt has a legitimate interest in doing exactly that—enforcing its laws, ensuring individuals do not flee, and protecting the public. *See Malam v. Adducci*, 469 F. Supp. 3d 767, 790 (E.D. Mich. 2020). Diaz has an outstanding removal order. Returning her to custody thus serves a recognized, legitimate government objective— effectuating that removal.

Nor are we anywhere near the constitutional danger zone. ICE re-detained Diaz on March 31, 2026. She has been in nearly two months. That is a far cry from the indefinite, limbo-like detention that the Supreme Court has rejected under the Fifth Amendment. *See Zadvydas v. Davis*, 533 U.S. 678 (2001). Instead, it falls well within the six-month window the *Zadvydas* Court deemed presumptively reasonable to carry out a deportation. *Id.* at 701

(holding that executive agencies may not hold noncitizens longer than six months when removal is not foreseeable and stating, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing").

Diaz protests that her removal is not likely in the foreseeable future because she has been granted withholding of removal under the Convention Against Torture. (Doc. 1 at 12-13.) First, although Diaz was granted withholding of removal to Cuba, nothing in the petition negates the possibility of third-country removal. And her removal order specifically allows deportation to "any country willing to accept respondent." (Doc. 10-2 at 5.) Second, this argument puts the cart before the horse. Until the six-month *Zadvydas* period concludes, detention is presumptively reasonable, and any due process claim is not ripe. *See, e.g., Grigorian v. Bondi*, Case No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025); *Lopez v. Dir. of Enf't and Removal Operations*, Case No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at *12 (M.D. Fla. Jan. 26, 2026); *Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300 at *4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months").

As the Supreme Court has long recognized, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. So the executive branch gets a presumptively reasonable six-month runway to do its job, negotiate with foreign governments, and execute a final removal order. *Zadvydas*, 533 U.S. at 701. Because Diaz remains inside that window, her current custody does not cross the line into the kind of indefinite, arbitrary lockup the Fifth Amendment forbids. Until that clock actually runs out, the Government retains the statutory authority to hold her while it works to put her on a plane.

### B. Procedural Due Process (Count II)

The Fifth Amendment prohibits deprivation of an individual's life, liberty, or property without due process of law. U.S. CONST. amend. V. "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982).

The first step is easy here. Once ICE unlocked the doors and placed Diaz on supervised release, she acquired a conditional liberty interest that triggered constitutional protection before it could be taken away. *See Young v. Harper*, 520 U.S. 143, 147-48 (1997). This is true even when the individual is subject to extensive conditions of release. *See Rodriguez Romero v. Ladwig*, No. CV 25-1106-JWD-EWD, 2026 WL 321437, at *11 (M.D. La. Feb. 6, 2026) ("[N]on-citizens have an overwhelming liberty interest in their continued release under [an] Order of Supervision . . . that may not be removed without due process."); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects.").

That takes us to the second step: determining exactly what process is due. At its core, the Due Process Clause demands that before the government strips a person of a protected liberty interest, it must provide notice and a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).

From the record now before the Court, the opportunity to be heard is entirely missing. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (describing the opportunity to present reasons why proposed action should not be taken as a "fundamental due process requirement"). The Government's response is notable for what it leaves out. It points to no hearing, no informal interview, and no immediate forum where Diaz could contest her sudden re-detention. (Doc. 10.) Taking a person's liberty and then making them sit in jail for months before even glancing at their paperwork flips the constitutional baseline on its head. Even ICE's own rulebook recognizes that taking away a person's conditional liberty requires far more procedural rigor than a silent, unilateral fiat. *See, e.g.*, 8 C.F.R. §§ 241.4(l), 241.13(i).

Due process is flexible. It "calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). To be sure, Diaz is a noncitizen subject to a final removal order, meaning he does not possess the full panoply of rights enjoyed by a citizen. But even with that caveat, the Constitution demands more than what has been offered here. While ICE's regulations do provide for a file review within several months after supervision is revoked, *see* 8 C.F.R. § 241.4, that is not sufficient. As other courts have recognized, a belated review, held more than three months after the jail cell door slams shut, is simply too little, too late to protect the

core liberty interest at stake. *See Grigorian*, 2025 WL 2604573, at \*9; *see also United States v. Smith*, 30 F.4th 1334, 1338 (11th Cir. 2022) ("We have said that the complete denial of the opportunity to be heard on a material issue is a violation of due process which is never harmless error[.]").

Diaz has proven a constitutional violation—the government cut corners and denied her the process she was due. But winning on a procedural claim is one thing; getting the remedy she wants is another.

Diaz seeks immediate release from custody. (Doc. 1 at 13.) That is a bridge too far. Habeas corpus is, at its core, governed by equitable principles. *Munaf v. Geren*, 553 U.S. 674, 693 (2008). And equity counsels against the drastic remedy of immediate release here for a couple of reasons. *Id.* ("The question, therefore, even where a habeas court has the power to issue the writ, is whether this be a case in which [that power] ought to be exercised.").

First, the natural remedy for a procedural shortcoming is a procedural fix. When an agency skips a step in its own rulebook, the typical judicial response is to force the agency to go back and do its job right—not to throw open the jailhouse doors. *See, e.g.*, *Msezane v. Gartland*, No. 5:19-CV-51, 2020 WL 1042293, at \*7 (S.D. Ga. Jan. 29, 2020) ("Critically, the Eleventh Circuit explained in the context of prolonged § 1226(c) detention, procedural due process does not require automatic release of a criminal alien once the detention is unreasonably prolonged but, instead, requires the government to

10

afford the alien an individualized bond inquiry."). Though not labeled as such, the specific injury Diaz claims here is the deprivation of an informal interview under §§ § 241.4(l) and 241.13(i). The logical cure, therefore, is to order exactly that. Granting a substantive windfall like immediate release for a purely procedural error overreaches. *See Nguyen v. Noem*, 797 F. Supp. 3d 651, 663-64 (N.D. Tex. 2025) ("The Supreme Court [has] made clear that error regarding one's confinement does not mean that release is the appropriate remedy.").

Second, the writ of habeas corpus is fundamentally forward-looking. It asks whether a petitioner's confinement is lawful today and whether it can lawfully continue tomorrow. *See Walker v. Wainwright*, 390 U.S. 335, 336 (1968) ("[T]he great and central office of the writ of habeas corpus is to test the legality of the prisoner's current detention."). A straightforward fix can easily restore Diaz's detention into constitutional compliance. Until ICE proves unwilling or unable to provide the process its regulations require, tearing up the detention order is simply premature. In the Court's view, the proper move is to hold the agency to its own rules, test whether it can cure the defect, and reserve the drastic remedy of release for a true failure to

comply. To that end, the Government must provide the required interview under 8 C.F.R. § 241.13(i)(3)[3] by May 5, 2026.

### III. Conclusion

The Government violated the Constitution when it canceled Diaz's supervision without providing her an opportunity to be heard. But winning on procedure does not entitle her to the substantive windfall of immediate release. Rather, the appropriate remedy is to require the Government to do its job and provide the process due. Accordingly:

1. Diaz's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED IN PART** and **DENIED IN PART**.

2. To the extent Diaz seeks immediate release from ICE custody, the petition is **DENIED**.

3. To the extent Diaz seeks a procedural remedy for the revocation of her supervised release, the petition is **GRANTED**.

4. Respondents are **ORDERED** to provide Diaz with the informal interview required by 8 C.F.R. § 241.13(i)(3) by **May 22, 2026**. If that procedure is not provided by the Court's deadline, Respondents are directed to release Diaz.

---

[3] Because the Government previously released Diaz after determining that there was no significant likelihood of her removal (Doc. 10-1 at 2), the regulation governing her return to custody here is 8 C.F.R. § 241.13(i).

5.  The Clerk is directed to enter judgment accordingly and close the case.

The Court will retain jurisdiction to enforce this Order.

**ORDERED** in Fort Myers, Florida on May 18, 2026.

Kyle C. Dudek
United States District Judge